# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO A. MANGAT,<br><br>                        Plaintiff,<br>    vs.<br><br>MICHAEL J. ASTRUE,<br><br>                       Defendant. | Civil No. 11-cv-02579-WQH (BGS)<br><br>**REPORT AND RECOMMENDATION: GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 13, 16] |

## I. INTRODUCTION

On November 4, 2011, Ernesto A. Mangat ("Plaintiff") filed a complaint pursuant to the Social Security Act (Act), 42 U.S.C. § 405(g), challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of disability benefits. (Doc. No. 1.) On January 20, 2012, the Commissioner filed an answer. (Doc. No. 10.) On March 22, 2012, Plaintiff filed a motion for summary judgment, requesting reversal and remand of the Administrative Law Judge's ("ALJ") final decision. (Doc. No. 13.) Plaintiff seeks reversal and remand on the basis that: (1) the Appeals Council erred in rejecting the additional evidence by the treating physician and should have remanded the matter for the ALJ to reconsider, and (2) the ALJ failed to satisfy the clear and convincing standard when rejecting Plaintiff's subjective medical testimony. (Doc. 13 at 4, 8.) On April 17, 2012, the Commissioner filed a cross-motion for summary judgment and a response in opposition to Plaintiff's motion. (Doc. Nos. 16-17.) Plaintiff filed a reply to the Commissioner's opposition as well as an

opposition to the Commissioner's motion for summary judgment. (Doc. No. 19.) The Commissioner filed a reply to Plaintiff's opposition. (Doc. No. 20.)

Pursuant to Civ. L.R. 7.1(d)(1), the Court finds the parties' cross-motions suitable for decision on the papers and without oral argument. After careful consideration of the administrative record and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, and that the Commissioner's cross-motion for summary judgment be **DENIED**.

## II. LEGAL STANDARDS FOR DETERMINATION OF DISABILITY

In order to qualify for disability benefits, an applicant must show that: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §423(d)(1)(A), (2)(A). An applicant must meet both requirements to be "disabled." *Id*. The applicant has the burden to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

The Secretary of the Social Security Administration set forth a five-step sequential evaluation process for determining whether a person has established his or her eligibility for disability benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The five steps in the process are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one or more of the specific impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir.2001).

///

The claimant bears the burden of proof during steps one through four. *Id*. at 953. The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.1999); *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, then the claimant is disabled. If, however, the Commissioner proves that the claimant is able to perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

### III. BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on January 22, 2009,[1] alleging disability beginning on December 10, 2008. (Administrative Record ("AR") 18, 41.) Plaintiff's application was based on, but not limited to, insulin-dependent diabetes mellitus, back pain from kidney stones, chest pain and gout. (AR 24, 42.) Plaintiff's application was denied initially and upon reconsideration. (AR 18.) Thereafter, he requested a hearing before an ALJ. (*Id*.) ALJ Parker held a hearing on November 10, 2010. (*Id*.) Plaintiff appeared and testified at the hearing, represented by his attorney Harold O. McNeil, Esq. (*Id*.) John R. Morse, M.D., an impartial medical expert, and Gloria J. Lasoff, M.A., an impartial vocational expert, also appeared and testified. (*Id*.)

**A.    Relevant Medical Records / Diagnoses Submitted to ALJ Prior to Hearing**

**1. Insulin Dependent Diabetes Mellitus With Mild Sensory Neuropathy**

Plaintiff has a ten year history of treatment for diabetes: originally being treated with oral medications, and later, in approximately 2008, being treated with insulin. (AR 337.) Throughout these ten years, Plaintiff "has never been hospitalized for out of control blood sugar...[,]" (*Id.,*) and has never suffered from diabetic ulcers or lesions. (AR 480.)

---

[1] Plaintiff's motion for summary judgment states Plaintiff filed his application on January 29, 2009. (Doc. 13 at 3.) However, the ALJ's decision and the transcript of oral hearing indicate that the application was filed January 22, 2009. (AR 18, 41.) As such, the Court shall reference the application as commencing on January 22, 2009, not January 29, 2009.

Yet, on November 30, 2009 the consultative examiner, ("CE"), Phong T. Dao, D.O., noted that Plaintiff's glucose level was high, and that his blood sugar was not controlled. (AR 341-342.) Further, progress notes from Operation Samahan show that, as of April 2, 2010, Plaintiff's diabetes was in fair to poor control with an elevated blood sugar level at 130 mg/dL. (AR 443.) In addition, various medical records evidence that Plaintiff has never complied with his diet restrictions or medication instructions. (AR 231, 246, 264, 268, 280, 281, 387.)

**2. Renal Insufficiency**

Plaintiff has renal insufficiency. For instance, on December 18, 2009, Sharp Chula Vista Medical Center noted that after Plaintiff's bypass surgery his renal symptoms were not significantly changed from before. (AR 363.) Further, medical records from Dr. Sacamay[2] at Balboa Nephrology Medical Group on March 31, 2010 and May 27, 2010, show that although Plaintiff did not require hemodialysus or peritoneal dialysis, Plaintiff received specialty care for his renal insufficiency. (AR 405-413.) Also, lab results from June 9, 2010 and September 25, 2010, establish that Plaintiff's creatinine levels were elevated. (AR 475-476.) Most recently, in a discharge summary from March 3, 2010, Paradise Valley Hospital confirmed Plaintiff's chronic kidney disease, as well as the presence of hematuria (presence of red blood cells) in his urine. (AR 450-451.)

**3. Polyarticular Gouty Arthritis ("Gout")**

As a consequence of his diabetes, Plaintiff suffers from gout. For example, signs of gout and accompanying pain were evidenced at the outset of Plaintiff's medical records, namely in the Kaiser medical records from March 3, 2008 to October 18, 2008. (AR 236-237.) Specifically, the Kaiser medical records state: (1) on October 9, 2009, "[l]eft hand mild tenderness in his hand with TOM no edema or erythema present," (AR 247,) (2) on September 14, 2008, left hand and left finger numb, and wrist pain "likely due to uncontrolled gout," (AR 274, 276,) and (3) on December 10, 2008, "[n]umbness and tingling of bilateral feet" but no foot lesions." (AR 280.)

Moreover, on November 30, 2009, the CE noted that Plaintiff "has a history of diabetic peripheral neuropathy [and] [o]n today's examination, his sensation to light touch in the extremities

---

[2]  For clarity, Dr. Sacamay is Elena Maria Bautista-Sacamay, M.D., also known as Plaintiff's treating physician, and shall be referred to as either Dr. Sacamay or treating physician.

was intact." (AR 342) The CE also acknowledged that Plaintiff "has intermittent burning pain in the feet." (AR 338.)

Further, Samahan Medical Center noted on February 5, 2010, that Plaintiff suffered from joint swelling with pain for a week. (AR 374.) And, between May 21, 2009 and August 25, 2010, Operation Samahan indicated in its progress notes that Plaintiff complained of: (1) arm swelling on February 5, 2010, (AR 436,) (2) right foot and shoulder pain on February 25, 2010, (AR 433,) (3) left elbow and right foot pain on April 16, 2010, (AR 429,) and (4) left knee swelling on September 16, 2010. (AR 430.)

More recently, on March 3, 2010, the Paradise Valley Hospital stated that Plaintiff was admitted to the Emergency Room in February for polyarthralgias (pain in two or more joints). (AR 450-451.) During his admittance, Plaintiff had an elevated blood cell count and a positive antinuclear antibody ("ANA") test, but negative RH factor. (*Id.*) A positive ANA test is an indication of an autoimmune disorder. Consequently, Plaintiff was provided a steroid taper, responded positively, and was discharged with referrals for follow-up care. (*Id.*)

Last, in its progress notes from September 3, 2010 to September 25, 2010, Operation Samahan noted that both of Plaintiff's feet were swollen and as a result, Plaintiff suffered from left leg pain. (AR 480-81.)

**4. Coronary Artery Disease, Bypass Surgery, and Congestive Heart Failure**

Plaintiff has coronary artery disease and underwent three-vessel coronary artery bypass surgery in November 2009. For instance, as the CE wrote on November 30, 2009:

> The claimant has no history of stroke but he did have a history of myocardial infarction recently, on November 12, 2009. His myocardial infarction was so severe that he had to have a three vessel cardiac bypass. Since the bypass, about two weeks ago, he continues to have midsternal chest pain especially with coughing, sneezing, deep breaths or bending down to pick up objects. The pain can also occur while he is sitting or lying down resting. He can now only walk about one block before getting shortness of breath and experience midsternal chest pain. When pain occurs, he denies any pain radiation and denies any nausea or vomiting. The pain can last anywhere from a few minutes to several hours. He is currently taking pain medication to help with the chest pain.

(AR 338.)

///

///

Since the bypass surgery, Plaintiff has experienced intermittent chest pain. For instance, at Sharp Chula Vista Medical Center on December 18, 2009, after bypass surgery, Dr. Ali noted "no shortness in breath or chest pain." (AR 362.) And on March 31, 2010 and May 27, 2010, Dr. Sacamay indicated that Plaintiff "denies chest pain nor [sic] shortness or breath." (AR 405, 408.) Yet, between May 21, 2009 and August 25, 2010, Operation Samahan wrote in its progress notes that Plaintiff complained of chest pain three times. (AR 417, 419, 427.) Moreover, on March 3, 2010, Paradise Valley Hospital's discharge summary stated that Plaintiff was admitted to the Emergency Room for polyarthralgias, but emphasized Plaintiff had an "atypical chest pain episode during his hospital stay." (AR 450-451.)

Last, Dr. Fernandez's progress notes about Plaintiff's recovery from December 31, 2009 to September 14, 2010, noted that Plaintiff (1) recovered but continued to receive follow up care, (AR 464,) (2) stabilized, (AR 464,) and (3) experienced the occasional chest pain, (AR 464,) but his lungs were clear and no episodes of arrhythmia. (AR 464-469.)

**5. Relevant "Lesser" Diagnoses**

Plaintiff has also suffered from:

**a. Back Pain**

On November 30, 2009, the CE diagnosed Plaintiff with back pain. (AR 340.) And on October 18, 2010, Dr. Sacamay diagnosed Plaintiff with back pain. (AR 493.) Dr. Sacamay indicated that the pain was from kidney stones, (AR 340,) whereas the CE did not specify, he simply wrote the pain was in the lumbar region. (AR 340.)

**b. Kidney / Renal Stones**

Paradise Valley Hospital indicated in its March 3, 2010 discharge summary that Plaintiff had "[m]ultiple shadowing left renal stones without hydronephrosis." (AR 461.) And on March 31, 2010 and May 27, 2010, Dr. Sacamay noted Plaintiff had "nonobstructing multiple renal stones." (AR 405, 408.)

///
///
///

### c. Dizziness

Plaintiff was treated for dizziness at Sharp Chula Vista Medical Center on December 18, 2009. (AR 353, 362.) On January 4, 2010, however, a progress note from Samahan Medical Group indicated that Plaintiff no longer felt dizzy. (AR 377.)

**B.      Hearing Testimony**

Plaintiff testified that he has had approximately 12 years of formal education. (AR 41.) His alleged disability arose on December 10, 2008, and since that date Plaintiff has not worked. (AR 42.) Plaintiff is about 5'7" and 172 pounds. (*Id.*) His body mass index is 27—indicating Plaintiff is overweight, but not obese. (*Id.*) When Plaintiff's attorney asked Plaintiff about his problems, he stated that he suffers from (1) kidney stones specifically causing him pain at night, (2) gout as a result of his diabetes for which he takes medication and was recently prescribed a cane for balance, (3) chest pain for which he takes medications,[3] (4) anxiety and depression for which he neither takes medication nor sees a psychiatrist, (5) dizzy spells caused by his medicine, (6) back pain from his kidney stones and back curvature for which he takes medication, and (7) uncontrollable diabetes. (AR 47-56, 59.)

Further, when Plaintiff's attorney asked about his physical abilities, Plaintiff explained that he (1) does not live alone and that his brothers and mother assist him, (2) can carry no more than 10 pounds, (3) experiences no pain when he sits, (4) can stand for less than 30 minutes due to his back pain and back curvature, (5) needs to rest and lie down for approximately 20 minutes three times a day, (6) can drive only to and from the doctor, and (7) takes all his medications consistently and according to the label's instruction. (AR 56-60.)

The medical expert ("ME"), John R. Morse, also testified. (AR 42.) Prior to commencing his testimony, the ME did not ask Plaintiff any questions concerning his injuries and treatment. (AR 42-43.) The ME testified that based on the medical evidence of record, Plaintiff suffered from impairments, but they were neither severe nor met the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (AR 43.) The ME listed the following impairments: (1) insulin-dependent diabetes, (2) mild peripheral bilateral neuropathy as a result of diabetes, (3) mild chronic renal insufficiency as

---

[3] Plaintiff suffers from coronary heart disease, and consequently, underwent coronary bypass surgery in November 2009 and has since recovered from his surgery. (AR 43.) His chest pain appears related to this disease and surgery. (*See* AR 338.)

a result of diabetes, (4) coronary artery disease, (5) high blood pressure that is presently under control, (6) a form of polyarthralgias, polyarthritis, or transient arthritis, and (7) renal stones.[4] (AR 43-44.)

The ALJ asked the ME to render a residual functional capacity ("RFC")[5] for what Plaintiff could do despite his limitations. (AR 44.) Prior to providing an RFC, the ME disclaimed Plaintiff's previous RFC rendered in November 2009 by the CE because that RFC was conducted approximately two or three weeks after Plaintiff's coronary bypass surgery and "making any kind of assumptions about a postoperative coronary patient within the first two to three months ... is probably not valid." (*Id.*) As such, based on the remaining medical evidence of record, the ME suggested that Plaintiff:

> [C]ould lift 10 pounds on a frequent basis, and 20 pounds occasionally. That he should be able to sit for six hours out of an eight hour day. That he should be able to stand and walk for six hours out of an eight hour day, and that there would be no additional push/pull limitation. From the non-exertional standpoint, he would be limited to occasional climbing. That includes ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling."

(AR 45.)

Next, Plaintiff's attorney questioned the ME. Here, the ME explained that Plaintiff's alleged dizziness and sensory neuropathy were taken into account when issuing the RFC. (*Id.*) The ME further explained that because no medical records were provided as to why Plaintiff was prescribed a cane, he could not say how this would affect his assessment. (*Id.*) Yet, the ME opined that from the medical evidence of record, Plaintiff's diabetes was not severe enough to warrant the use of a cane. (AR 47.)

Lastly, the ALJ called a vocational expert ("VE") to testify during the administrative hearing. (AR 61-64.) The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated for Plaintiff in the ME's RFC, but not according to the CE's RFC. (AR 62.) The VE replied that a person with those restrictions would be unable to perform Plaintiff's past work as an electrician, but would be able to perform the lesser job as an electrician for manufactured buildings. (*Id.*)

---

[4] The hearing transcript dated November 10, 2010 indicates that the ME stated Plaintiff suffered from "real stones." However, after reviewing the medical records, the Court believes that "real stones" is meant to read "renal stones."

[5] Although later discussed in more detail, for clarity, an RFC "is the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC "is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step five to determine whether an individual is able to do other work, considering his or her age, education, and work experience." Social Security Ruling ("SSR") 96–8p.

## C.     ALJ's Findings

On November 17, 2010, the ALJ issued his decision denying benefits. (AR 18-27.) In arriving at his decision, the ALJ applied the Commissioner's five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520, and described above. The ALJ agreed that Plaitniff had not engaged in substantial gainful activity during the relevant period. (AR 20.) Accordingly, the ALJ found that Plaintiff satisfied step one. (*Id.*)

At step two, the ALJ found that Plaintiff suffered from the following *severe* impairments: (1) insulin dependent diabetes mellitus with mild sensory neuropathy, (2) mild renal insufficiency, (3) coronary artery disease status post three-vessel coronary artery bypass graft, and (4) arthralgias (i.e. gout). (*Id.*) Also at step two, the ALJ found that Plaintiff's alleged impairments of depression and anxiety were unsupported by the record. (*Id.*) Thus, with regards to the listed impairments above, the ALJ found that Plaintiff satisfied step two. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 21-22.) The ALJ, therefore, proceeded to step four.

The fourth and fifth steps require the ALJ to determine how the claimant's impairments affect the claimant's ability to perform work. To make this determination, the ALJ formulates the claimant's RFC. An RFC "is the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC "is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step five to determine whether an individual is able to do other work, considering his or her age, education, and work experience." Social Security Ruling ("SSR") 96–8p. The ALJ found that Plaintiff had an RFC to perform light work, provided that Plaintiff limit his climbing, balancing, stooping, kneeling, crouching, crawling, and concentrated exposure to fumes, odors, dusts, gases, poor ventilation as well as unprotected heights and machinery. (AR 22.) The ALJ partially came to this decision regarding Plaintiff's RFC by dismissing the conclusion drawn in November 2009 by the CE that "claimant was limited to sedentary activities" since the CE's exam was only weeks after Plaintiff's bypass surgery. (AR 25.) As such, the ALJ's determination was largely based on the ME's testimony.

After the ALJ formulates the claimant's RFC, the ALJ must consider whether the claimant can, in light of that RFC, perform past or other work. To do so, the ALJ may rely on the testimony of a vocational expert. 20 C.F.R. §§ 404.1560(b)(2) and 404.1566(e). Typically, the ALJ asks the VE whether, given certain hypothetical assumptions about the claimant's capabilities, "the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.3 (9th Cir.1988). In response, the "VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162–63 (9th Cir.2001). The job must exist "in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 404.1566(a).

Based on the VE's testimony, the ALJ found that Plaintiff did not have an RFC to perform his past relevant work, but that Plaintiff's "past relevant work as an electrician had transferable skills to light work such as an electrician for manufactured buildings." (AR 26.) The ALJ thus concluded that Plaintiff was not disabled because he could work as an electrician of manufactured buildings. (AR 27.)

Plaintiff appealed the ALJ's decision to the Appeals Council and submitted additional medical records in support of the appeal.

**D.  Additional Records Submitted to the Appeals Council After ALJ Hearing**

On three separate occasions, between March and July 2011, Plaintiff's new counsel, Denise Haley, Esq., submitted additional medical records to the Appeals Council. (AR 9, 495, 497, 506.)

**1. Medical Report: March 5, 2011[6] From Dr. Sacamay**

On March 5, 2011, Dr. Sacamay—Plaintiff's treating physician—wrote on a prescription "[p]atient ... has multiple medical problems. At this point I believe patient would be unable and ineffective for employment. Any assistance afforded to him would be much appreciated...." (AR 495.)

///

///

---

[6] The Appeals Council indicates that this medical report is dated March 9, 2011. (AR 9.) However, the date on the medical report / prescription is March 5, 2011. As such, March 5, 2011 is the date this Court will reference.

**2. Medical Report / RFC Questionnaire: March 10, 2011 From Dr. Sacamay**

On March 10, 2011, Dr. Sacamay completed an RFC questionnaire regarding what Plaintiff can do despite his limitations. The RFC outlines Plaintiff's impairments, which include but are not limited to, uncontrolled diabetes, chronic renal failure, polyarticular gouty arthritis, coronary artery disease, bypass surgery, and congestive heart failure. (AR 499.) The RFC indicates that Plaintiff does not suffer from depression, but continues to experience fatigue, joint swelling, and joint pain. (AR 499-500.) The RFC states that Plaintiff often experiences pain or other symptoms which interfere with his attention and concentration. (AR 500.) Although Plaintiff only has a slight limitation in dealing with work stress, the RFC questionnaire completed by Dr. Sacamay identifies the following functional limitations applicable to Plaintiff: (1) he cannot walk more than two city blocks, (2) he cannot continuously sit more than 45 minutes, (3) he cannot continuously stand more than 30 minutes, (4) he cannot stand/walk more than two hours in an eight hour work day, (5) he cannot walk more than 12 minutes every 45 minutes, (6) he cannot be restricted as to when he can stand/walk, (7) he cannot be restricted from taking unscheduled breaks every hour for 15 minutes, (8) he cannot sit for prolonged periods without elevating his legs for two to three hours out of an eight hour day, (9) he cannot lift more than 10 pounds, (10) he cannot receptively reach, grasp, or manipulate items, and (11) he cannot be expected to miss less than three days of work a month due to his impairments or treatment. (AR 501-503.)

In sum, the RFC completed by Dr. Sacamay, a treating physician, concludes that Plaintiff is not "fit to be employed in any way." (AR 503.) Dr. Sacamay explained Plaintiff suffers from uncontrolled diabetes and polyarthritis, has a history of coronary artery disease, and underwent bypass surgery. (*Id.*) In addition, "[m]ost of the medications that can control his pain is [sic] contraindicated to his decreased renal function." (*Id.*)

Also attached to the RFC was a second copy of the medical report dated March 5, 2011, addressed above.

**3. Medical Report: May 19, 2011 to June 21, 2011 From Alvarado Hospital**

A medical report from Alvarado Hospital notes Plaintiff has "[c]ritical triple-vessel coronary artery disease, patent SVG-RCA, patent mid body stent SVG-RCA, [and] occluded distal LAD with

patent LIMA to mid LAD." (AR 508.) The plan is to provide Plaintiff with medical therapy, IV hydration, and "continue with aspirin and Plavis long-term." (*Id.*)

The Appeals Council accepted the new evidence and incorporated it into the record, but ultimately denied the request for review. (AR 5-9.) The Appeal Council's denial made the ALJ's denial of benefits the Commissioner's final decision. (AR 5.)

### III. SCOPE OF REVIEW

Section 205(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g). The scope of judicial review is limited. *See* 42 U.S.C.A. § 405(g). This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See* 42 U.S.C.A. § 405(g); 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration for further proceedings. *Id.*

The Commissioner's decision must be affirmed upon review if it is: (1) supported by "substantial evidence" and (2) based on proper legal standards. *Uklov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). If the Court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Substantial evidence is more than a scintilla but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." *Id.*; *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding substantial evidence in the record despite the ALJ's failure to discuss every piece of evidence). "Where evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Nevertheless, the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

///

///

## IV. DISCUSSION

In the instant motion, Plaintiff argues that in light of the additional medical records submitted, the weight of the evidence changed and the Appeals Council should have remanded the case to the ALJ to make a disability determination based on the complete record. (Doc. No. 13 at 8.) Specifically, Plaintiff contends, when considering the record as a whole, the ALJ erred in giving little weight to the treating physician's opinion.[7] In addition, Plaintiff argues that the ALJ erred in failing to articulate clear and convincing reasons for rejecting Plaintiff's subjective medical testimony. (*Id.*) As such, Plaintiff requests the case be remanded to the ALJ to make a new disability determination. (*Id.* at 11.)

### A. The Additional Medical Records Provided to The Appeals Council are Properly Part of the Record Before This Court

In this case, Plaintiff did not submit all of his medical records to the ALJ, including those from his treating physician, Dr. Sacamay. Plaintiff did, however, provide these records to the Appeals Council. The Appeals Council considered the new evidence but found that the additional information did not "provide a basis for changing the Administrative Law Judge's decision." (AR 6.) Accordingly, this Court **must** consider the new evidence and evaluate the record as a whole in light of this evidence. *Brewes v. Commissioner of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (holding "that when an claimant submits evidence for the first time to the Appeals Council, which considers the evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir.1993). *See also, e.g., Harman v. Apfel*, 211 F.3d 1172, 1190 (9th Cir.2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 at n. 2 (9th Cir. 2007).

---

[7] Technically, Plaintiff contends that when considering the additional medical evidence, the Appeals Council erred in rejecting the treating physician's opinion. (Doc. No. 13 at 8.) However, as previously discussed, this Court only has jurisdiction to determine whether the Commissioner applied the correct legal standards and whether the Commissioner's factual conclusions were supported by substantial evidence, not whether the Appeals Council made a proper decision. *See* 42 U.S.C.A. § 405(g); 20 C.F.R. § 404.900(a)(5). As such, this Court is not authorized to review whether or not the Appeals Council properly rejected the treating physician's opinion, but rather this Court reviews the ALJ's determination. Here, the ALJ did not reject the treating physician's opinion, but rather gave little weight to his opinion. Accordingly, the Court will review, when considering the record as a whole, especially the additional medical records, whether the ALJ must accord different weight to the treating physician's opinion.

Even though the additional evidence includes medical records dated after the ALJ's decision on November 17, 2010, the new evidence is still part of the administrative record "so long as the evidence relates to the period on or before the ALJ's decision." *Brewes*, 682 F.3d at 1162. Here, the additional evidence relates to the ALJ's determination of Plaintiff's RFC. Thus, this Court must consider the additional evidence in order to determine whether the ALJ's ultimate decision, including assigning Plaintiff a certain RFC, is supported by substantial evidence.

**B.  In Light of the Additional Medical Evidence, the ALJ Must Reconsider the Weight Accorded to Dr. Sacamay's Opinion**

In Social Security cases, courts apply a hierarchy of deference to medical opinions depending on the nature of the services provided, and distinguish between three types of physicians: (1) physicians who treat the claimant ("treating physicians"); (2) physicians who examine but do not treat the claimant ("examining physicians"); and (3) physicians who neither examine nor treat the claimant ("nonexamining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is entitled to the greatest weight, while the examining physician's opinion is entitled to greater weight than a non-examining physician. *Id.* The treating physician's opinion is entitled to the greater weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., *it must be adopted*." Soc. Sec. Rul. 96–2p (emphasis added).

Additionally, an ALJ's decision as to how much weight to accord a medical opinion must be accompanied by "good reasons" that are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p; 20 C.F.R. § 404.1527(d)(2) (2004). Courts will reverse and remand a denial of benefits, even though "substantial evidence otherwise supports the decision of the Commissioner," when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician. If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. 20 C.F.R. § 404.1527(d)(2).

When the Court considers the record as a whole, including Plaintiff's additional medical records where Dr. Sacamay actually provides an opinion regarding Plaintiff's disability, it concludes that the ALJ erred in giving Dr. Sacamay's opinion little weight. In order for the ALJ to discount a treating physician's opinion and not accord it controlling weight, the ALJ must give good reasons. Unfortunately, when the ALJ wrote the decision denying benefits, the treating physician's full opinion regarding Plaintiff's medical impairments was not part of the record for consideration. Nevertheless, that opinion is now part of the record on review and must be specifically addressed before the opinion can be discounted and not afforded controlling weight.

Dr. Sacamay's opinion is clearly set out in the additional records: "At this point I believe patient would be unable [and] ineffective for employment." (AR 495.) Moreover, Dr. Sacamay completed an RFC questionnaire that includes diagnoses, symptoms, and offers an opinion regarding Plaintiff's ability to work. (AR 499-503.) Dr. Sacamay's opinion is that Plaintiff has multiple medical problems and that he is not fit to be employed in any way. (AR 503.) The opinion is not limited to one specific impairment—it takes into consideration Plaintiff's uncontrolled diabetes, renal function, gout, and overall pain. (AR 503.) Given the significance of Dr. Sacamay's opinion as rendered on March 10, 2011, the ALJ has not applied the factors necessary in order to not accord Dr. Sacamay's opinion controlling weight.

In sum, when the Court considers the record as a whole, which necessarily includes the more recent medical records, it concludes that the ALJ erred in not affording Dr. Sacamay's opinion controlling weight because the ALJ has not provided "good reasons" for discounting the opinion.

**C.   The ALJ Properly Rejected Plaintiff's Subjective Complaint Testimony**

The Ninth Circuit has established a two-step analysis for the ALJ to evaluate the credibility of a plaintiff's testimony regarding subjective pain. *Vasquez v. Astrue*, 575 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter*, 504 F.3d at 1035-36). First, the ALJ must determine whether the claimant has

///

presented objective medical evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 575 F.3d at 591.

Second, if the claimant satisfies the first step and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if he provides "specific, clear and convincing reasons" for doing so. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (citing *Lester*, 81 F.3d at 834). "In order for the ALJ to find [claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). Moreover, the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.1991). "In weighing a claimant's credibility," the ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity and effect of the symptom of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997).

Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 24.) Nonetheless, he also found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The Court finds that the ALJ's decision properly set forth clear and convincing reasons supported by substantial evidence in the record for rejecting Plaintiff's subjective complaint testimony. Pursuant to *Light*, the ALJ pointed to inconsistencies in Plaintiff's testimony, conduct, and medical records order to reject Plaintiff's subjective complaint testimony regarding his (1) daily chest pain, (2)

significant back and joint pain, (3) dizziness and balance problems,[8] and (4) diabetes being out of control. For instance, in rejecting Plaintiff's subjective complaint testimony regarding his daily chest pain, the ALJ explained: (1) the medical records show only occasional complaints of chest pain, not daily chest pain, and (2) Plaintiff testified at the hearing that he does not take the pain medication prescribed for his chest pain. (AR 24-25.) Further, in rejecting Plaintiff's subjective complaint testimony regarding his significant back and joint pain, the ALJ explained that the medical records show intermittent episodes of joint swelling, and one or two occasions of mild effusion and minor spurs, not significant back and joint pain. (AR 25.) Next, in rejecting Plaintiff's subjective complaint testimony regarding his dizziness, the ALJ explained that (1) the medical records do not support a finding of balance problems, (2) the medical records show Plaintiff no longer complains of dizziness after being treated for it, and (3) nothing in the medical records corroborates Plaintiff's testimony that he was prescribed a cane. (*Id.*) Last, in rejecting Plaintiff's subjective complaint testimony regarding his diabetes being out of control, the ALJ explained: (1) Plaintiff has not been compliant with his diet and taking his medications, and (2) the medical records show no hospital admissions or emergency room visits. In sum, the Court finds that the ALJ properly set forth clear and convincing reasons supported by substantial evidence in the record in order to reject Plaintiff's subjective complaint testimony.

**D.     Remand Is Appropriate**

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal

---

[8] The ALJ wrote that Plaintiff testified that he requires a cane for balance and to relieve pain. (AR 25.) However, looking at the hearing testimony, there appears to be no assertion by Plaintiff that he requires a cane to relieve pain. Rather, Plaintiff testified that the cane was needed for balance as a result of his gout. (AR 51.) As such, the Court will review the ALJ's credibility determination in this context looking at Plaintiff's contention he requires a cane for balance.

and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."). Because the ALJ has not had the opportunity to consider the new medical records and evaluate Dr. Sacamay's full opinion, the Court finds that remand for further proceedings is appropriate.

On remand, the ALJ must accord "controlling weight" to Dr. Sacamay's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ determines that the opinion is not well-supported or is inconsistent with the other substantial evidence in the record, including the additional evidence submitted to the Appeals Council, the ALJ must address the weight accorded to the opinion using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927. Soc. Sec. Rul. 96-2p.

In light of the fact that the case will be remanded for the ALJ to reevaluate his treatment of Dr. Sacamay's opinion, and will require the ALJ to review and assess the impact of the additional medical evidence, the Court concludes that the ALJ should also reconsider the credibility determination. As indicated above, the ALJ only rejected Plaintiff's subjective complaint testimony "to the extent it is inconsistent with the Plaintiff's RFC." (AR 24.) Relying largely on the ME's testimony, the ALJ found that Plaintiff had an RFC to perform light work, and dismissed the CE's determination that "claimant was limited to sedentary activities" since the CE's exam was only weeks after Plaintiff's bypass surgery. (AR 22, 25.) The additional medical records, however, include an RFC questionnaire provided by Dr. Sacamay— Plaintiff's treating physician. (AR 499.) As such, should the ALJ give Dr. Sacamay's opinion controlling weight on remand it may change the RFC that the ALJ ultimately adopts. Therefore, after evaluating all of the evidence on remand, Plaintiff's complaints may be deemed consistent with the RFC ultimately adopted by the ALJ, thereby rendering Plaintiff's complaints regarding his symptoms consistent with the RFC. In the event that Plaintiff's complaints are consistent with the RFC that the ALJ assigns, Plaintiff would be deemed credible. Accordingly,
///

ALJ'd decision on remand must also include an assessment of Plaintiff's credibility in the light of additional medical evidence.

The ALJ is reminded that the decision following remand must provide "clear and convincing" reasons for rejecting Plaintiff's testimony, *Vasquez*, 575 F.3d at 591, in light of the additional evidence, and "may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Rollins*, 261 F.3d at 856-57; *see also Burch*, 400 F.3d at 681 (noting that "lack of medical evidence cannot form the sole basis for discounting pain testimony").

### VI.  CONCLUSION

Having reviewed the matter, the undersigned Magistrate Judge recommends that Plaintiff's motion for summary judgment be **GRANTED in part**, and that Defendant's cross-motion for summary judgment be **DENIED**.  This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **January 22, 2013**, any party to this action may file written objections with the Court and serve a copy to all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 31, 2013.**

**IT IS SO ORDERED**.

DATED: January 2, 2013

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court