1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ERNESTO AZADA MANGAT,

                       Plaintiff,

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

CASE NO. 11cv2579-GPC(BGS)

**ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING MATTER TO COMMISSIONER OF SOCIAL SECURITY**

      Plaintiff Ernesto Azada Mangat (hereinafter "Plaintiff") brings this action pursuant to § 405(g) of the Social Security Act (hereinafter "Act") to obtain judicial review and remedy of the final decision of the Commissioner of the Social Security Administration (hereinafter "Defendant") in a claim for disability insurance benefits under Title II of the Act. 42 U.S.C. § 405(g). Before the Court are the parties' cross motions for summary judgment. On January 2, 2013, Magistrate Judge Skomal filed a report and recommendation granting Plaintiff's motion for summary judgment and denying Defendant's motion for summary judgment. (ECF No. 23.) The Magistrate Judge recommended that the matter be remanded to the Commissioner for further proceedings. (Id.) On January 18, 2013, Defendant filed objections to the report and recommendation. (ECF No. 24.) Plaintiff filed a reply to Defendant's objections on

February 5, 2013.  (ECF No. 26.)  Based on the reasoning below, the Court ADOPTS the report and recommendation granting Plaintiff's motion for summary judgment and  denying Defendant's motion for summary judgment.  The Court REMANDS the matter to the Commissioner of Social Security for further proceedings.

## Background

The  Magistrate  Judge's  report  and  recommendations  provides  a  factual background that is not objected to by the parties.  Accordingly, the Court adopts the factual background of the Magistrate Judge and recites them below.[1]

Plaintiff filed an application for a period of disability and disability insurance benefits on January 22, 2009, alleging disability beginning on December 10, 2008. (Administrative Record ("AR") 18, 41.)  Plaintiff's application was based on, but not limited to, insulin-dependent diabetes mellitus, back pain from kidney stones, chest pain and gout.  (AR 24, 42.)  Plaintiff's application was denied initially and upon reconsideration.  (AR 18.)  Thereafter, he requested a hearing before an ALJ.  (Id.) ALJ Parker held a hearing on November 10, 2010.  (Id.)  Plaintiff appeared and testified at the hearing, represented by his attorney Harold O. McNeil, Esq.  (Id.)  John R. Morse, M.D., a medical expert, and Gloria J. Lasoff, M.A., a vocational expert, also appeared and testified.  (Id.)

**A.      Relevant Medical Records / Diagnoses Submitted to ALJ Prior to Hearing**

**1.      Insulin Dependent Diabetes Mellitus With Mild Sensory Neuropathy**

Plaintiff has a ten year history of treatment for diabetes: originally being treated with oral medications, and later, in approximately 2008, being treated with insulin. (AR 337.)  Throughout these ten years, Plaintiff "has never been hospitalized for out of control blood sugar . . . ", and has never suffered from diabetic ulcers or lesions. (AR 337, 480.)

Yet, on November 30, 2009 the consultative examiner, ("CE"), Phong T. Dao, D.O., noted that Plaintiff's glucose level was high, and that his blood sugar was not

---

[1]The Court has added some facts for clarity.

controlled. (AR 341-342.) Further, progress notes from Operation Samahan, a community health clinic, show that, as of April 2, 2010, Plaintiff's diabetes was in fair to poor control with an elevated blood sugar level at 130 mg/dL. (AR 443.) In addition, various medical records evidence that Plaintiff has never complied with his diet restrictions or medication instructions. (AR 231, 246, 264, 268, 280, 281, 387.)

### 2.     Renal Insufficiency

Plaintiff has renal insufficiency. On December 18, 2009, Sharp Chula Vista Medical Center noted that after Plaintiff's bypass surgery his renal symptoms were not significantly changed from before. (AR 363.) Further, medical records from Plaintiff's treating physician, Dr. Elena Maria Bautista-Sacamay ("Dr. Sacamay"), at Balboa Nephrology Medical Group on March 31, 2010 and May 27, 2010, show that although Plaintiff did not require hemodialysus or peritoneal dialysis, Plaintiff received specialty care for his renal insufficiency. (AR 405-413.) Also, lab results from June 9, 2010 and September 25, 2010, establish that Plaintiff's creatinine levels were elevated. (AR 475-476.) Most recently, in a discharge summary from March 3, 2010, Paradise Valley Hospital confirmed Plaintiff's chronic kidney disease, as well as the presence of hematuria (presence of red blood cells) in his urine. (AR 450-451.)

### 3.     Polyarticular Gouty Arthritis ("Gout")

As a consequence of his diabetes, Plaintiff suffers from gout. For example, signs of gout and accompanying pain were evidenced at the outset of Plaintiff's medical records, namely in the Kaiser medical records from March 3, 2008 to October 18, 2008. (AR 236-237.) Specifically, the Kaiser medical records state: (1) on October 9, 2009, "[l]eft hand mild tenderness in his hand with TOM no edema or erythema present," (AR 247), (2) on September 14, 2008, left hand and left finger numb, and wrist pain "likely due to uncontrolled gout," (AR 274, 276), and (3) on December 10, 2008, "[n]umbness and tingling of bilateral feet" but no foot lesions." (AR 280.)

Moreover, on November 30, 2009, the CE noted that Plaintiff "has a history of diabetic peripheral neuropathy [and] [o]n today's examination, his sensation to light

touch in the extremities was in tact." (AR 342.)  The CE also acknowledged that Plaintiff "has intermittent burning pain in the feet." (AR 338.)  Further, Samahan Medical Center noted on February 5, 2010, that Plaintiff suffered from joint swelling with pain for a week.  (AR 374.)  And, between May 21, 2009 and August 25, 2010, Operation Samahan indicated in its progress notes that Plaintiff complained of: (1) arm swelling on February 5, 2010, (AR 436), (2) right foot and shoulder pain on February 25, 2010, (AR 433), (3) left elbow and right foot pain on April 16, 2010, (AR 429), and (4) left knee swelling on September 16, 2010.  (AR 430.)

More recently, on March 3, 2010, the Paradise Valley Hospital stated that Plaintiff was admitted to the Emergency Room in February for polyarthralgias (pain in two or more joints). (AR 450-451.)  During his admittance, Plaintiff had an elevated blood cell count and a positive antinuclear antibody ("ANA") test, but negative RH factor.  (Id.)  A positive ANA test is an indication of an autoimmune disorder. Consequently, Plaintiff was provided a steroid taper, responded positively, and was discharged with referrals for follow-up care.  (Id.)  Last, in its progress notes from September 3, 2010 to September 25, 2010, Operation Samahan noted that both of Plaintiff's feet were swollen and as a result, Plaintiff suffered from left leg pain.  (AR 480-81.)

### 4.   Coronary Artery Disease, Bypass Surgery, and Congestive Heart Failure

Plaintiff has coronary artery disease and underwent three-vessel coronary artery bypass surgery in November 2009.  On November 30, 2009, the CE wrote:

> The claimant has no history of stroke but he did have a history of myocardial infarction recently, on November 12, 2009. His myocardial infarction was so severe that he had to have a three vessel cardiac bypass. Since the bypass, about two weeks ago, he continues to have midsternal chest pain especially with coughing, sneezing, deep breaths or bending down to pick up objects. The pain can also occur while he is sitting or lying down resting. He can now only walk about one block before getting shortness of breath and experience midsternal chest pain. When pain occurs, he denies any pain radiation and denies any nausea or vomiting. The pain can last anywhere from a few minutes to several hours. He is currently taking pain medication to help with the chest pain.

(AR 338.)

Since the bypass surgery, Plaintiff has experienced intermittent chest pain. For instance, at Sharp Chula Vista Medical Center on December 18, 2009, after bypass surgery, Dr. Ali noted "no shortness in breath or chest pain." (AR 362.) And on March 31, 2010 and May 27, 2010, Dr. Sacamay indicated that Plaintiff "denies chest pain nor [sic] shortness or breath." (AR 405, 408.) Yet, between May 21, 2009 and August 25, 2010, Operation Samahan wrote in its progress notes that Plaintiff complained of chest pain three times. (AR 417, 419, 427.) Moreover, on March 3, 2010, Paradise Valley Hospital's discharge summary stated that Plaintiff was admitted to the Emergency Room for polyarthralgias, but emphasized Plaintiff had an "atypical chest pain episode during his hospital stay." (AR 450-451.)

Last, Dr. Fernandez's progress notes about Plaintiff's recovery from December 31, 2009 to September 14, 2010, noted that Plaintiff (1) recovered but continued to receive follow up care, (AR 464), (2) stabilized, (AR 464), and (3) experienced the occasional chest pain, (AR 464), but his lungs were clear and there were no episodes of arrhythmia. (AR 464-469.)

**5.    Relevant "Lesser" Diagnoses**

Plaintiff has also suffered from:

**a.    Back Pain**

On November 30, 2009, the CE diagnosed Plaintiff with back pain. (AR 340.) And on October 18, 2010, Dr. Sacamay diagnosed Plaintiff with back pain. (AR 493.) Dr. Sacamay indicated that the pain was from kidney stones, (AR 340), whereas the CE did not specify, he simply wrote the pain was in the lumbar region. (AR 340.)

**b.    Kidney / Renal Stones**

Paradise Valley Hospital indicated in its March 3, 2010 discharge summary that Plaintiff had "[m]ultiple shadowing left renal stones without hydronephrosis." (AR 461.) And on March 31, 2010 and May 27, 2010, Dr. Sacamay noted Plaintiff had

1   "nonobstructing multiple renal stones." (AR 405, 408.)

2            **c.   Dizziness**

3      Plaintiff was treated for dizziness at Sharp Chula Vista Medical Center on

4 December 18, 2009. (AR 353, 362.) On January 4, 2010, however, a progress note

5 from Samahan Medical Group indicated that Plaintiff no longer felt dizzy. (AR 377.)

6 **B.   Hearing Testimony**

7      Plaintiff testified that he has had approximately 12 years of formal education.

8 (AR 41.) His alleged disability arose on December 10, 2008, and since that date

9 Plaintiff has not worked. (AR 42.) Plaintiff is about 5'7" and 172 pounds. (Id.) His

10 body mass index is 27—indicating Plaintiff is overweight, but not obese. (Id.) When

11 Plaintiff's attorney asked Plaintiff about his problems, he stated that he suffers from (1)

12 kidney stones specifically causing him pain at night, (2) gout as a result of his diabetes

13 for which he takes medication and was recently prescribed a cane for balance, (3) chest

14 pain for which he takes medications,[2] (4) anxiety and depression for which he neither

15 takes medication nor sees a psychiatrist, (5) dizzy spells caused by his medicine, (6)

16 back pain from his kidney stones and back curvature for which he takes medication,

17 and (7) uncontrollable diabetes. (AR 47-56, 59.)

18      Further, when Plaintiff's attorney asked about his physical abilities, Plaintiff

19 explained that he (1) does not live alone and that his brothers and mother assist him,

20 (2) can carry no more than 10 pounds, (3) experiences no pain when he sits, (4) can

21 stand for less than 30 minutes due to his back pain and back curvature, (5) needs to rest

22 and lie down for approximately 20 minutes three times a day, (6) can drive only to and

23 from the doctor, and (7) takes all his medications consistently and according to the

24 label's instruction. (AR 56-60.)

25      The medical expert ("ME"), John R. Morse, also testified. (AR 42.) Prior to

26 commencing his testimony, the ME did not ask Plaintiff any questions concerning his

27

28     [2]Plaintiff suffers from coronary heart disease, and consequently, underwent coronary bypass surgery in November 2009 and has since recovered from his surgery. (AR 43.) His chest pains appear to be related to this disease and surgery. (See AR 338.)

     [11-2579-GPC(BGS)]

injuries and treatment.  (AR 42-43.)  The ME testified that based on the medical evidence of record, Plaintiff suffered from impairments, but they were neither severe nor met the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (AR 43.)  The ME listed the following impairments: (1) insulin-dependent diabetes, (2) mild peripheral bilateral neuropathy as a result of diabetes, (3) mild chronic renal insufficiency as a result of diabetes, (4) coronary artery disease, (5) high blood pressure that is presently under control, (6) a form of polyarthralgias, polyarthritis, or transient arthritis, and (7) renal stones.  (AR 43-44.)

The ALJ asked the ME to render a residual functional capacity ("RFC")[3] for what Plaintiff could do despite his limitations.  (AR 44.)  Prior to providing an RFC, the ME disclaimed Plaintiff's previous RFC rendered in November 2009 by the CE because that RFC was conducted approximately two or three weeks after Plaintiff's coronary bypass surgery and "making any kind of assumptions about a postoperative coronary patient within the first two to three months . . . is probably not valid."  (Id.) As such, based on the remaining medical evidence of record, the ME suggested that Plaintiff:

> [C]ould lift 10 pounds on a frequent basis, and 20 pounds occasionally. That he should be able to sit for six hours out of an eight hour day. That he should be able to stand and walk for six hours out of an eight hour day, and that there would be no additional push/pull limitation. From the non-exertional standpoint, he would be limited to occasional climbing. That includes ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling.

(AR 45.)

Next, Plaintiff's attorney questioned the ME. Here, the ME explained that Plaintiff's alleged dizziness and sensory neuropathy were taken into account when

---

[3]Although later discussed in more detail, for clarity, an RFC "is the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  An RFC "is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step five to determine whether an individual is able to do other work, considering his or her age, education, and work experience."  Social Security Ruling ("SSR") 96-8p.

issuing the RFC. (Id.) The ME further explained that because no medical records were provided as to why Plaintiff was prescribed a cane, he could not say how this would affect his assessment. (Id.) Yet, the ME opined that from the medical evidence of record, Plaintiff's diabetes was not severe enough to warrant the use of a cane. (AR 47.)

Lastly, the ALJ called a vocational expert ("VE") to testify during the administrative hearing. (AR 61-64.) The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated for Plaintiff in the ME's RFC, but not according to the CE's RFC. (AR 62.) The VE replied that a person with those restrictions would be unable to perform Plaintiff's past work as an electrician, but would be able to perform the lesser job as an electrician for manufactured buildings. (Id.)

**C.    ALJ's Findings**

On November 17, 2010, the ALJ issued his decision denying benefits. (AR 18-27.) In arriving at his decision, the ALJ applied the Commissioner's five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. The ALJ agreed that Plaintiff had not engaged in substantial gainful activity during the relevant period. (AR 20.) Accordingly, the ALJ found that Plaintiff satisfied step one. (Id.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) insulin dependent diabetes mellitus with mild sensory neuropathy, (2) mild renal insufficiency, (3) coronary artery disease status post three-vessel coronary artery bypass graft, and (4) arthralgias (i.e. gout). (Id.) Also at step two, the ALJ found that Plaintiff's alleged impairments of depression and anxiety were unsupported by the record. (Id.) Thus, with regards to the listed impairments above, the ALJ found that Plaintiff satisfied step two. (Id.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 21-22.) The ALJ, therefore, proceeded to step four. The fourth and

fifth steps require the ALJ to determine how the claimant's impairments affect the claimant's ability to perform work.  To make this determination, the ALJ formulates the claimant's RFC.  An RFC "is the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  An RFC "is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step five to determine whether an individual is able to do other work, considering his or her age, education, and work experience."  Social Security Ruling ("SSR") 96–8p.  The ALJ found that Plaintiff had an RFC to perform light work, provided that Plaintiff limit his climbing, balancing, stooping, kneeling, crouching, crawling, and concentrated exposure to fumes, odors, dusts, gases, poor ventilation as well as unprotected heights and machinery. (AR 22.)  The ALJ partially came to this decision regarding Plaintiff's RFC by dismissing the conclusion drawn in November 2009 by the CE that "claimant was limited to sedentary activities" since the CE's exam was only weeks after Plaintiff's bypass surgery.  (AR 25.)  As such, the ALJ's determination was largely based on the ME's testimony.

After the ALJ formulates the claimant's RFC, the ALJ must consider whether the claimant can, in light of that RFC, perform past or other work.  To do so, the ALJ may rely on the testimony of a vocational expert. 20 C.F.R. §§ 404.1560(b)(2) and 404.1566(e).  Based on the VE's testimony, the ALJ found that Plaintiff did not have an RFC to perform his past relevant work, but that Plaintiff's "past relevant work as an electrician had transferable skills to light work such as an electrician for manufactured buildings." (AR 26.)  The ALJ thus concluded that Plaintiff was not disabled because he could work as an electrician of manufactured buildings. (AR 27.) Plaintiff appealed the ALJ's decision to the Appeals Council and submitted additional medical records in support of the appeal.

**D.     Additional Records Submitted to the Appeals Council After ALJ Hearing**

On three separate occasions, between March and July 2011, Plaintiff's new counsel, Denise

Haley, Esq., submitted additional medical records to the Appeals Council. (AR 9, 495, 497, 506.)

### 1. Dr. Sacamay's Medical Report dated March 5, 2011

On March 5, 2011, Dr. Sacamay, Plaintiff's treating physician, wrote on a prescription pad, "[p]atient . . . has multiple medical problems. At this point I believe patient would be unable and ineffective for employment. Any assistance afforded to him would be much appreciated . . . ." (AR 495.)

### 2. Dr. Sacamay's RFC Questionnaire dated March 10, 2011

On March 10, 2011, Dr. Sacamay completed an RFC questionnaire regarding what Plaintiff can do despite his limitations. The RFC outlines Plaintiff's impairments, which include but are not limited to, uncontrolled diabetes, chronic renal failure, polyarticular gouty arthritis, coronary artery disease, bypass surgery, congestive heart failure, hypertension and hyperlipidemic. (AR 499.) The RFC indicates that Plaintiff does not suffer from depression, but continues to experience fatigue, joint swelling, and joint pain. (AR 499-500.) The RFC states that Plaintiff often experiences pain or other symptoms which interfere with his attention and concentration. (AR 500.) Although Plaintiff only has a slight limitation in dealing with work stress, the RFC questionnaire completed by Dr. Sacamay identifies the following functional limitations applicable to Plaintiff: (1) he cannot walk more than two city blocks, (2) he cannot continuously sit more than 45 minutes, (3) he cannot continuously stand more than 30 minutes, (4) he cannot stand/walk more than two hours in an eight hour work day, (5) he cannot walk more than 12 minutes every 45 minutes, (6) he cannot be restricted as to when he can stand/walk, (7) he cannot be restricted from taking unscheduled breaks every hour for 15 minutes, (8) he cannot sit for prolonged periods without elevating his legs for two to three hours out of an eight hour day, (9) he cannot lift more than 10 pounds, (10) he cannot receptively reach, grasp, or manipulate items, and (11) he cannot be expected to miss less than three days of work a month due to his impairments or treatment. (AR 501-503.)

In sum, the RFC completed by Dr. Sacamay, a treating physician, concludes that Plaintiff is not "fit to be employed in any way." (AR 503.) Dr. Sacamay explained Plaintiff suffers from uncontrolled diabetes and polyarthritis, has a history of coronary artery disease, and underwent bypass surgery. (Id.) In addition, "[m]ost of the medications that can control his pain is [sic] contraindicated to his decreased renal function." (Id.) Also attached to the RFC was a second copy of the medical report dated March 5, 2011, addressed above.

### 3.   Alvarado Hospital Medical Report dated May 19, 2011

On May 19, 2011, Plaintiff underwent procedures for left heart catherization; selective left and right coronary angiogram; left ventricular angiogram; thoracic aotogram; saphenous vein graft angiography; left internal mammary artery angiography; and percutaneous closure, right common femoral artery. (AR 510.) The medical report for these procedures indicated that Plaintiff has "[c]ritical triple-vessel coronary artery disease, patent SVG-RCA, patent mid body stent SVG-RCA, [and] occluded distal LAD with patent LIMA to mid LAD." (AR 508.) The treatment plan was to provide Plaintiff with medical therapy, IV hydration, and "continue with aspirin and Plavix long-term." (Id.)

The Appeals Council accepted the new evidence and incorporated it into the record, but ultimately denied the request for review. (AR 5-9.) The Appeal Council's denial made the ALJ's denial of benefits the Commissioner's final decision. (AR 5.)

### Discussion

### A.   Standard of Review of Magistrate Judge's Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district judge's review of a magistrate judge's report and recommendation. The district judge must "make a *de novo* determination of those portions of the report to which objection is made," and "may accept, reject, or modify, in whole or in part, the finding or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence

[11-2579-GPC(BGS) ]

of timely objection(s), the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Committee Notes (1983); see also United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (district judge "must review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise.").

**B.      Scope of Review of Commissioner's Decision**

Section 205(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.   42 U.S.C. § 405(g).    The Commissioner's denial of benefits  "will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Brawner v. Sec'y of Health and Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (citing Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  Id.  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**C.   Analysis**

To qualify for disability benefits under the Act, an applicant must show that: (1) he or she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of

performing the work that the applicant previously performed and incapable of performing any other substantially gainful employment that exists in the national economy.   42 U.S.C. § 423(d).   The claimant's impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

The Social Security Regulations (hereinafter "Regulations") employ a five step process to determine whether an applicant is disabled under the Act.   If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed to the subsequent steps. 20 C.F.R. § 404.1520 (2007); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The applicant bears the burden of proof as to the first four steps. Tackett, 180 F.3d at 1098.   If the fifth step is reached, the burden shifts to the Commissioner. Id.   The five steps are as follows:

Step 1.   Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.

Step 2.   Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

Step 3.   Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

Step 4.   Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

Step 5.   Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner

- 13 -

1
2
3
4

> to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines . . . .  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability insurance benefits.

5
6

Id. at 1098-99 (footnotes and citations omitted).

### D.   ALJ's Assessment of Treating Physician

7
8
9
10

The Magistrate Judge concluded that when the ALJ denied Plaintiff's benefits, the treating physician's full opinion regarding Plaintiff's medical impairments were not part of the record for consideration and must be considered before it can be discounted and not afforded controlling weight.  (Dkt. No. 23. at 15.)

11
12
13
14
15
16

On November 17, 2010, the ALJ issued a decision denying benefits.  (AR 15.) Subsequently, on three separate occasions, between March and July 2011, Plaintiff's new counsel, Denise Haley, Esq. submitted additional medical records to the Appeals Council.  (AR 495, 497, 506.)   These records provide direct medical opinions concerning Plaintiff's medical impairments and his ability to work.

17
18
19
20
21
22
23
24
25

The Ninth Circuit has held that the district court must consider evidence submitted for the first time to the Appeals Council as part of the administrative record and assess whether the Commissioner's decision is supported by substantial evidence. Brewer v. Comm. of Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012).  The Ninth Circuit distinguishes among the "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  20 C.F.R. § 404.1527 (d)(2) (2004) provides:

26
27
28

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . .

[11-2579-GPC(BGS) ]

In general, more weight should be given to the treating physician's opinion than to the opinion of doctors who do not treat the claimant.  Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  The treating physician's opinion is not, however, necessarily conclusive as to either physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In addition, the ALJ need not accept the opinion of the treating physician if it is conclusory, brief and unsupported by clinical findings.  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  If the treating physician's opinion is not contradicted by another doctor, the ALJ must provide "clear and convincing" reasons to reject the opinion of the treating physician.  Lester, 81 F.3d at 830.  If the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject the opinion without providing "specific and legitimate reasons" supported by substantial evidence.  Id.

Defendant objects to the Magistrate Judge's conclusion that the case should be remanded to further consider Dr. Sacamay's opinion based on evidence that Plaintiff's submitted to the Appeals Council.  Defendant argues that Dr. Sacamay's medical records submitted to the Appeals Council does not change the fact that substantial evidence supports the ALJ's decision because the ALJ noted inconsistencies with the treating notes indicating no complaints of pain and medical opinion indicating complaints of pain.  Plaintiff contends that the Magistrate Judge properly concluded that the matter should be remanded to the ALJ for consideration of medical evidence provided by Dr. Sacamay.

First, the Court questions the ALJ's rejection of Dr. Sacamay's opinion based on inconsistencies.  While the ALJ notes that Dr. Sacamay's medical opinion dated October 18, 2010 stating that Plaintiff experiences back pain related to his kidney stones is in conflict with Dr. Sacamay's treatment notes where the Plaintiff denies any complaints, the CE, on November 30, 2009, noted that Plaintiff had bilateral back pain.  (AR 340.)

Moreover, Dr. Sacamay's medical records before the ALJ were limited to

[11-2579-GPC(BGS) ]

Plaintiff's kidney issues and not the other multiple medical issues concerning Plaintiff's alleged disability. The additional medical records submitted after the ALJ's decision provides a more comprehensive opinion of Plaintiff's medical condition by his treating physician.

The Court agrees that the matter should be remanded to the ALJ to consider the additional medical records where Dr. Sacamay provides specific opinions as to issues relevant to determining whether Plaintiff is disabled under the Act. Since the additional medical records by Plaintiff's treating physician were not considered by the ALJ and no "specific and legitimate reasons"[4] were given to discount the treating physician's opinion, the Commissioner's decision is not supported by substantial evidence in the record. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence . . . .") Since Plaintiff submitted a more comprehensive medical assessment by his treating physician, the ALJ must consider the new medical records and reconsider the weight accorded to Dr. Sacamay's opinion.

**E.     Plaintiff's Subjective Symptom Complaints**

The Magistrate Judge concluded that the ALJ properly rejected Plaintiff's subjective complaint testimony; however, on remand, the Magistrate Judge directed that the ALJ should reconsider the credibility determination after the ALJ reviews and assesses the impact of the additional medical evidence. According to the ALJ's decision, he rejected Plaintiff's subjective complaint testimony "to the extent it is inconsistent with the Plaintiffs' RFC." (AR 24.) The Magistrate Judge concluded that since the ALJ based the RFC based on the ME's testimony, his decision may differ after a review of the treating physician's medical records.

Assessing Plaintiff's testimony regarding the severity of his impairments depends on the medical evidence. See Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir.

---

[4]It appears that the treating physician's opinion is contradicted by the ME's opinion.

2012) ("Because the RFC determination must take into account the claimant's testimony regarding his capability, the ALJ must assess that testimony in conjunction with the medical evidence."). Therefore, since the ALJ, on remand, will consider the additional medical records presented for the first time before the Appeals Council, the ALJ's determination of Plaintiff's subjective symptom complaints for purposes of an RFC assessment must be revisited.

## Conclusion

Based on the above, the Court ADOPTS the report and recommendation granting Plaintiff's motion for summary judgment in part and denying Defendant's cross-motion for summary judgment. The Court REMANDS the matter to the Commissioner of the Social Security Administration for further proceedings consistent with this Order.

IT IS SO ORDERED.

DATED:  April 4, 2013

HON. GONZALO P. CURIEL
United States District Judge

[11-2579-GPC(BGS) ]